# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MEAGHAN WOOD,

       **Plaintiff,**

                                   **Case No. 2:18-cv-1098**
    **v.**                                   **JUDGE GEORGE C. SMITH**
                                         **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL
SECURITY,

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Meaghan Wood, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 7). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.     BACKGROUND

On October 29, 2015, Plaintiff filed applications for both supplemental security income and disability insurance benefits, alleging that she had been disabled since July 5, 2015. (R. at 221–26.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 133–38, 144–48.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 156–57.)

Administrative Law Judge ("ALJ") William Stanley held a hearing on January 25, 2018, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 38–58.)  On March 5, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 11–24.)  On July 20, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–5.)  Plaintiff then timely commenced the instant action.

## II.  MEDICAL RECORDS[1]

### A.  David R. Bousquet, M.Ed.

On January 13, 2016, Plaintiff presented to David R. Bousquet, M.Ed., upon referral by the Ohio Division of Disability Determination for psychological evaluation relating to her claim for mental disability benefits.  (R. at 338–45.)  Plaintiff reported that her biological parents divorced when she was around age one and that she was raised by her mother.  (R. at 339.)  Plaintiff reported that she had two step-fathers, the first of whom was an alcoholic and with whom she did not get along.  (*Id.*)  Plaintiff has never been married but has four daughters aging in range from nineteen to six years old.  (*Id.*)  Plaintiff reported raising her daughters until 2012, at which time she was abusing drugs and her children went into foster care.  (*Id.*)  Plaintiff ultimately lost custody of her daughters whom she stated did not want to come back home and with whom she has no contact.  (*Id.*)

Plaintiff reported graduating from high school after attending regular classes and denied any difficulties in learning or with relating to classmates or teachers while in school.  (*Id.*)  Plaintiff also reported attending a community college and received a one-year certificate in medical assisting.  (*Id.*)

---

[1] The undersigned refers to additional relevant medical records in the analysis below.

Plaintiff admitted to a history of abusing cocaine, methamphetamines, and IV heroin, but has not used any drugs since 2012.  (R. at 340.)

Upon examination, Mr. Bousquet observed that Plaintiff presented with a neat and clean appearance, exhibited no body odors, and was cooperative during the evaluation.  (R. at 342.) Her speech was 100% understandable, sustainable, and goal oriented.  (*Id*.)  At times her speech was pressured, but she did not have any difficulties with receptive or expressive language and her associations were organized.  (*Id*.)  Mr. Bousquet also observed that Plaintiff struggled with maintaining attention and concentration during the evaluation but was easily refocused.  (*Id*.)  At times she was restless and fidgety.  (*Id*.)

As to her sensorium and cognitive functioning, Mr. Bousquet determined that Plaintiff's cognitive abilities fall in the normal range.  (R. at 344.)  With regard to her insight and judgment, Mr. Bousquet noted that Plaintiff was able to discuss and describe emotional and psychological difficulties.  (*Id*.)  While Plaintiff's reasoning and judgment capacities appeared to fall at age appropriate levels, Mr. Bousquet opined that these capacities "can be easily influenced by her psychological difficulties."  (*Id*.)  According to Mr. Bousquet, Plaintiff would be able to participate in decisions affecting the future and to conduct her own living arrangements.  (*Id*.)

Mr. Bousquet noted that Plaintiff had experienced emotional and psychological difficulties for a number of years and had been involved with outpatient counseling and hospitalized three times for psychiatric reasons and for substance abuse.  (*Id*.)  Mr. Bousquet opined that Plaintiff "would experience neither significant resolution of the symptoms nor significant deterioration in the mental functioning."  (*Id*.)

Mr. Bousquet found that Plaintiff's self-report of her emotional and psychological difficulties did not exceed what was observed in the interview process, that she did not exhibit

significant inconsistencies in her self-report, and that her self-reported data appeared to be reliable. (R. at 343–44.)

Mr. Bousquet offered the following functional assessment of Plaintiff: her presentation during the evaluation supported intellectual functioning in the average range; she would be able to understand, remember, and carry out instructions in a work setting consistent with individuals who possess average intellectual capabilities; she had problems attending and concentrating but could be refocused; she would be expected to have difficulties with abilities to maintain attention and concentration and with abilities to maintain appropriate persistence and pace in a work setting; she has the capabilities of engaging in simple as well as multi-step tasks. (R. at 343.) Mr. Bousquet noted that while Plaintiff did not have any difficulties relating to him during the evaluation, she did state that when working "she did experience difficulties relating with coworkers and with supervisors because of fluctuations in her moods"; that she stated that "she prefers to withdraw and isolate herself from others and typically only has contact with her mother and stepfather"; she reported "ongoing issues relating with her mother." (*Id*.) Mr. Bousquet opined that "from an emotional and psychological perspective she would be expected to have difficulties with abilities to conform to social expectations in a work setting." (*Id*.)

As to her ability to respond to workplace pressure, Mr. Bousquet stated as follows:

> During the interview she did describe having problems with managing work related stresses and/or pressures adaptively and effectively. She reports that currently under the conditions of stress and pressure she finds herself tearful on a daily basis. She continues to experience noticeable fluctuations in her moods. She does acknowledge that she does not allow herself to express any type of anger or frustration. Also under the conditions of stress and pressure she experiences anxiety, she worries and is fearful. She also describes having anxiety/panic attacks that occur on a regular basis. Available information indicates that from an emotional and psychological perspective she does have the abilities to respond appropriately to work place stresses and pressures.

(R. at 345.)

4

**B.      State agency review – Mental assessments**

On January 28, 2016, Kristen Haskins, Psy.D., a state-agency psychologist, reviewed Plaintiff's medical record upon initial consideration. (R. at 71–73, 77–79, 86–88.) Dr. Haskins opined that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning, concentration, persistence or pace, and no repeated episodes of decompensation. (R. at 73, 88.) As to Plaintiff's mental residual functional capacity ("RFC") and her capacity to maintain sustained concentration and persistence, Dr. Haskins opined that Plaintiff would need a "work area separate from others to enhance focus where claimant would receive intermittent supervision to ensure claimant is working towards desired production and quality goals." (R. at 78, 93.) Plaintiff would also need "occasional flexibility" with changing scheduled shifts and breaks. (*Id.*)

As to Plaintiff's capacity and limitations with social interaction, Dr. Haskins opined that Plaintiff "would need nonpublic setting job where there is a small group of coworkers with whom claimant has only brief, conventional interactions. Would need occasional constructive feedback from a supervisor to ensure claimant is on task for work goals and to address any concerns claimant has about the work." (*Id.*)

As to Plaintiff's adaptation capacity and limitations, Dr. Haskins opined that Plaintiff "can work in a setting in which duties are routine and predictable and without demands for fast pace or high productions. Changes would need to be explained." (R. at 79, 94.)

On May 4, 2016, Audrey Todd, Ph.D., reviewed the medical record upon reconsideration. (R. at 105, 109–11, 125–27.) Dr. Todd agreed with the limitations found by Dr. Haskins. (*Id.*)

### III.    ADMINISTRATIVE DECISION

On March 5, 2018, the ALJ issued his decision.  (R. at 11–24.)  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016.  (R. at 13.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity during the period from her alleged onset date of July 5, 2015.  (*Id.*)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity; depressive disorder; anxiety disorder; panic disorder; acute meniscal tear of the left knee; and osteoarthrosis.  (R. at 14.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 15.)  At step four, the ALJ assessed Plaintiff's RFC, which ended in an incomplete sentence, as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1.    Is the claimant engaged in substantial gainful activity?
   2.    Does the claimant suffer from one or more severe impairments?
   3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
   4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
   5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as define in 20 CFR 404.1567(b) and 416.967(b) except the work must be: limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; be limited to sitting a total of six to eight hours in and eight hour workday; be limited to stand or walking, off and on, for a total of four hours in an eight hour workday; be limited to occasional climbing of stairs and ramps, balancing, stooping, and crouching; entail no climbing of ropes, ladders, or scaffolds, kneeling, or crawling; avoid all exposure to hazards such as machinery and unprotected heights; be limited to low stress occupations (no assembly line work, no fast pace production requirements, no more than occasional changes in work routine or work setting, and [sic]

(R. at 17.) In reaching this determination, the ALJ accorded "significant weight" to the state-agency opinions of Dr. Haskins and Dr. Todd, reasoning as follows:

Turning to the mental opinion evidence, the undersigned affords significant weight to the State agency consultants' mental assessments by Kristen Haskins, Psy.D. and Audrey Todd, Ph.D. Exhibits 1A, 2A SA, and 6A. Drs. Haskins and Todd did not personally examine the claimant, but they did have access to the longitudinal medical records on file. Lending support to their opinions, Drs. Haskins and Todd both found that the claimant had mild restrictions in activities of daily living, moderate restrictions in social functioning, moderate restrictions in maintaining concentration, persistence and pace, and no episodes of decompensation. As discussed above, the claimant has diagnoses of depression, anxiety, and panic disorder, which would be expected to cause some limitations on activities of daily living, social functioning, and concentration, persistence, and pace, supporting the opinions of Drs. Haskins and Todd. Subsequent to the assessments of Drs. Haskins and Todd, the Social Security Administration updated regulations, particularly regarding the "paragraph B" limitations. Nevertheless, as discussed above, the medical evidence of record indicates the claimant has no more than moderate limitations, supporting the opinions of Drs. Haskins and Todd that the claimant has no disabling mental health conditions.

(R. at 22.) The ALJ assigned "only some weight," however, to Mr. Bousquet's opinions because Mr. Bousquet "has not offered any specific functional limitations, but rather has offered vague statements regarding" Plaintiff's functional abilities. (R. at 21.)

Relying on the VE's testimony, the ALJ determined that even though Plaintiff is unable to perform her past relevant work, other jobs exist in the national economy that she can perform.

(R. at 22–23.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 23.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant

of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff advances two contentions of error. Plaintiff first asserts that the ALJ's RFC is incomplete and therefore unreviewable. (ECF No. 9 at 13–15.) Plaintiff next argues that the RFC is not supported by substantial evidence because it does not appropriately restrict her. (*Id.* at 15–20.) The undersigned considers these contentions in turn.

### A. The reviewability of the RFC

Plaintiff contends that the RFC is incomplete because the ALJ's summary ended in a fragment sentence and never included, *inter alia*, a limitation that Plaintiff can only occasionally interact with supervisors, co-workers, and the public. (ECF No. 9 at 13–15.) Plaintiff argues that neither this Court nor the Commissioner's counsel should substitute an interpretation of what the ALJ may have intended to include and, therefore, substantial evidence does not support the RFC. (*Id.*) The Commissioner disagrees, contending that while the ALJ's summary is truncated due to an apparent typographical error, his narrative discussion adequately explains what limitations applied to Plaintiff. (ECF No. 12 at 2–4.)

The Commissioner's argument is well taken. "After all, just as 'there can be no such thing as an error-free, perfect trial,' there can be no such thing as an error-free, perfect administrative decision, especially in an agency called upon to adjudicate a nearly inconceivable number of claims every year." *Moore v. Comm'r Soc. Sec.*, No. 2:14-cv-13202, 2015 WL 4936693, at *4 (E.D. Mich. Aug. 18, 2015) (stating further that "the only errors requiring remand are those that harm the claimant") (citing, *inter alia*, *Rutherford v. Comm'r of Soc. Sec.*, 67 F. App'x 333, 334 (6th Cir. 2003)). Accordingly, district courts may disregard "a rather obvious

typographical error in the ALJ's opinion" and examine "the opinion as a whole to interpret the true meaning of the ALJ's findings." *Calkins v. Sec'y of Health and Human Servs.*, 793 F.2d 1290 (Table), 1986 WL 17083, at *1–2 (6th Cir. 1986); *see also Gribbins v. Comm'r Soc. Sec. Admin.*, 37 F. App'x 777, 779 (6th Cir. 2002) (stating that "[t]he findings and conclusions of the Commissioner are reviewed by this court in the context of the record as a whole" and finding that the district court "did not err in finding mere typographical error in the ALJ's second statement regarding residual functional capacity" when reviewing "the hearing transcript and the ALJ's decision *in pari materia*") (citations omitted); *Yerian v. Comm'r Soc. Sec.*, No. 2:17-cv-562, 2018 WL 3045076, at *5 (S.D. Ohio June 20, 2018) (rejecting a contention of error based on a typographical error in the ALJ's discussion of the state agency reviewing psychologists' opinions because "[i]t is clear from the context as well as the decision as a whole, however, that the ALJ considered the opinions in assessing Plaintiff's mental RFC"), *report and recommendation adopted by* 2018 WL 4357479 (S.D. Ohio Sep. 13, 2018); *Quinlan v. Comm'r Soc. Sec.*, No. 1:14-cv-427, 2015 WL 3447844, at *6 (S.D. Ohio May 28, 2015) ("[T]he ALJ's obvious typographical error is not controlling" where "it is clear when the ALJ's decision is read as a whole that the ALJ intended to adopt the VE's testimony concerning the jobs a hypothetical individual with plaintiff's RFC could perform"), *report and recommendation on adopted by* 2015 WL 3822624, (S.D. Ohio June 19, 2015); *Mixon v. Colvin*, No. 1:13-cv-173, 2013 WL 4501307, at *8 (N.D. Ohio Aug. 21, 2013) ("The ALJ's full discussion of this issue, however, clearly reflects that the ALJ actually concluded that Plaintiff's personality disorder was not severe, and that the ALJ's use of a double negative was a typographical error.").

Here, as set forth in detail above, the ALJ's summary of the RFC ended in a fragment sentence. (R. at 17 (stating, *inter alia*, that Plaintiff was capable of "no more than occasional

changes in work routine or work setting, and [sic]").)  However, as Plaintiff acknowledges (ECF No. 9 at 14), the ALJ's discussion of the RFC limitations reveals that the ALJ's ultimate RFC assessment included the additional limitation of only occasional interaction with supervisors, co-workers, and the public.  (R. at 20–21.)  Therefore, reading the decision as a whole, it is clear that the ALJ intended to include in his RFC summary such a limitation and no other additional limitations.[3]  *See Calkins*, 1986 WL 17083, at *1–2; *Gribbins*, 37 F. App'x at 779; *Yerian*, 2018 WL 3045076, at *5; *Quinlan*, 2015 WL 3447844, at *6; *Mixon v. Colvin*, No. 1:13-cv-173, 2013 WL 4501307, at *8.

Moreover, even if the narrative discussion did not sufficiently demonstrate that this social restriction in the ALJ's RFC, any error is harmless.  The ALJ's hypothetical to the vocational expert ("VE") included the restriction of occasional interaction.  The VE testified that the hypothetical individual retained the capacity to perform a significant number of jobs in the national economy.  (R. at 61–62.)  Accordingly, Plaintiff was not prejudiced as the outcome would have been the same, *i.e.*, Plaintiff was capable of performing jobs existing in significant numbers in the national economy.  *See Moore*, 2015 WL 4936693, at *4 ("[T]he only errors requiring remand are those that harm the claimant."); *see also Kobetic v. Comm'r Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (finding harmless error and staying that "[w]hen 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game'") (citations omitted).

For these reasons, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

---

[3] The next section further addresses Plaintiff's arguments that the ALJ should have included additional specific limitations in the RFC.

**B. The RFC's failure to include additional limitations**

Plaintiff also argues that the ALJ's RFC is not supported by substantial evidence because it does not appropriately restrict her. Plaintiff specifically complains that the RFC fails to include limitations associated with additional breaks during the day or week due to panic attacks, being off task greater than ten percent (10%) of a workday or being late to work or absent from work more than two times per month.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and

describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

In addition, Plaintiff bears the burden of providing the necessary medical evidence to demonstrate her impairments cause functional limitations resulting in disability. 20 C.F.R. §404.1512(c). Where the ALJ has properly considered Plaintiff's evidence and substantial evidence supports the ALJ's conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)

Here, in formulating the RFC, the ALJ carefully considered Plaintiff's mental health treatment history, which reflected normal findings and results, including generally normal judgment and insight; appropriate mood and affect; pleasant and/or cooperative demeanor upon examination; appropriate grooming and hygiene; some struggle maintaining attention and concentration but retains ability to be "easily" refocused; no problems with temper control; appropriate grooming and hygiene; clean and neat appearance; adequate attention span and concentration, intact recent and remote memory. (R. at 15–16, 19–20.)

Plaintiff nevertheless insists that Mr. Bousquet's evaluation supports additional limitations. (ECF No. 9 at 14–17.) The ALJ, however, assigned Mr. Bousquet's "only some weight[,]" reasoning as follows:

Turning to the opinion evidence, David Bousquet, M.Ed. opined the claimant had the ability to understand, remember, and carry out instructions in a work setting consistent with individuals who possess average intellectual capabilities. Mr. Bousquet opined the claimant would be expected to have difficulties with abilities to maintain concentration and attention and also with abilities to maintain appropriate persistence and pace in a work setting, but that she was able to engage in simple as well as multi-step tasks. He opined that from an emotional and

psychological perspective she would be expected to have difficulties with abilities to conform to social expectations in a work setting. He opined the claimant would have the ability to respond appropriately to work place stresses and pressures. Exhibit 3F. This assessment is not particularly probative in this case because he has not offered any specific functional limitations, but rather has offered vague statements regarding the claimant's functional abilities. Therefore, the undersigned has afforded the opinions of Mr. Bousquet only some weight. Nevertheless, the undersigned notes that the difficulties expressed by Mr. Bousquet are generally accommodated in the above residual functional capacity with a reduction to low stress work that entail only occasional interaction with supervisors, co-workers, and the public.

(R. at 21.) The undersigned finds no error with this assessment. Notably, the ALJ correctly noted that Mr. Bousquet did not impose any specific functional limitations such as additional breaks or being off task more than ten percent of a workday or being late to work or absent from work more than two times per month. (R. at 21, 338–45.)

Plaintiff also points to her own testimony and self-reports to support including additional limitations to the RFC, implicitly criticizing the ALJ's credibility determination. (ECF No. 9 at 6–7, 17 (citing R. at 350 (follow-up appointment record from Trinity Medical dated March 4, 2016, reflecting that Plaintiff "reports that she has such high anxiety she feels like she cannot leave the house") and 352 (follow-up appointment record from Trinity Medical dated February 4, 2016, reflecting that Plaintiff complained of anxiety that "has been bad, especially this past week, lays in bed with panic").) Plaintiff's arguments are not well taken. "The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an

ALJ's credibility determinations "with respect to [a claimant's] subjective complaints." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029 (March 16, 2016); *but see Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid."). The United States Court of Appeals for the Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)). SSR 16-3p tasks the ALJ with explaining his or her credibility determination with sufficient specificity as "to make clear

to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brothers v. Berryhill*, Case No. 5:16-cv-01942, 2017 WL 29125, at *11 (N.D. Ohio June 22, 2017) (citing *Rogers*, 486 F.3d at 248).

Here, the ALJ reasonably discounted Plaintiff's allegations of the severity of her symptoms arising from her depression, anxiety, and panic disorder. (R. at 15–20.) The ALJ concluded that the limiting effects of Plaintiff's symptoms were not entirely consistent with the record evidence. (R. at 18.) In doing so, the ALJ specifically considered Plaintiff's conservative mental health treatment and improvement of her symptoms with such treatment; her activities of daily living; and work history, all which undermined the severity of the symptoms alleged:

> Overall, the claimant has a treatment history that fails to demonstrate a mental health condition of the degree of severity for which the claimant has alleged. The claimant has alleged debilitating mental health conditions for which the claimant has generally sought no more than conservative mental health treatment. In fact, during the period at issue the claimant's treatment records indicate an exacerbation of symptoms that required hospitalization; however, her symptoms improved and she required no further emergent or inpatient treatment due to her mental health condition throughout the period at issue. Additionally, the claimant's recent treatment records indicated improvement in her condition with increased counseling. Therefore, the undersigned finds the claimant's conditions are not as severe as alleged. Furthermore, the undersigned finds the above referenced residual functional capacity, which is quite restrictive, more than accommodates for any mental health condition alleged by the claimant with a reduction to low stress work that entails no more than occasional interaction with supervisors, co-workers, and the public.

> The claimant's activities of daily living further limit the claimant's reliability regarding her alleged debilitating conditions. The claimant reported that she is able to cook, clean, take care of herself without assistance, and that she lives alone. Exhibit 5E. She testified that she has a driver's license. She testified that she visits her parents. She testified that she goes grocery shopping every three or four months, takes out the trash, takes care of her dog, and watches television. While the claimant alleged difficulties with some activities, her activities of daily living do not preclude the limitations set forth in the above residual functional capacity. The undersigned notes that the claimant's self-described activities of daily living are not consistent with a totally disabled individual.

The claimant's work history also undermines her allegations. Overall, the claimant has demonstrated little apparent motivation, inclination, or need to sustain consistent employment. Indeed, the claimant has no earnings reflective of yearly substantial gainful activity level employment since 2010 and only six years of earnings indicative of yearly substantial gainful activity levels of employment during her entire employment history. Exhibit 5D. Overall, the claimant's work history raises some questions as to whether the current unemployment is due to her medical conditions.

The above factors detract from the severity of the claimant's allegations concerning the severity of her symptoms. The foregoing evidence does indicate the claimant to have abnormalities, which are likely to impose some functional limitations. However, the undersigned concludes that these findings are not indicative of any intractable condition that would preclude the claimant from performing light work activity for 12 consecutive months. The claimant has a treatment history, which fails to demonstrate a condition of the degree of severity that the claimant has alleged, and he has engaged in significant daily activities. Furthermore, a review of the claimant's work history shows that the claimant has demonstrated little apparent motivation, inclination, or need to sustain consistent employment, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments.

(R. at 20–21.)

The ALJ's consideration of the record evidence and discussion provides substantial evidence supporting his credibility determination. For example, the ALJ also reasonably considered that Plaintiff required and received only conservative treatment. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (finding that minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time

period."); *cf. Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment).  In addition, it was reasonable for the ALJ to consider that Plaintiff's condition improved after taking prescribed medication.  *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (finding that improvement after taking prescribed medication supports a denial of disability benefits) (citing *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987)).  The ALJ also reasonably considered the record evidence reflecting Plaintiff's activities of daily living.  *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."). Further, the ALJ properly determined that Plaintiff's work history and efforts to seek and maintain employment undermined her credibility.  *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *10 (S.D. Ohio Jan. 31, 2017) (finding that substantial evidence supported the ALJ's credibility determination where the ALJ considered, *inter alia*, testimony regarding plaintiff's "lack of motivation" demonstrated by her "poor work history"), *report and recommendation adopted by* 2017 WL 680538 (S.D. Ohio Feb. 21, 2017);  *Oleary v. Comm'r of Soc. Sec.*, No. 14-cv-10869, 2015 WL 730109, at *7 (E.D. Mich. Feb. 19, 2015) (finding that the ALJ appropriately considered the claimant's work history when evaluating her credibility).

While Plaintiff disputes the ALJ's assessment of her activities of daily living and contends that the ALJ cherry-picked the evidence (ECF No. 9 at 17–19), the ALJ reasonably considered the record evidence reflecting her activities of daily living when weighing the credibility of Plaintiff's allegations of the severity of her symptoms.  *See* 20 C.F.R. §

404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").  Plaintiff goes on to point out her self-reports as to her limitations, one instance where her grooming was described as "marginal[,]" and one instance during an exam where it was noted that she had panic attacks twice daily and there were "[n]o alleviating factors" to support her argument that her activities of daily living support additional limitations.  (ECF No. 9 at 17 –18 (citing R. at 1220, 1224, 1320).)  However, for the reasons previously discussed, the ALJ's determination is supported by substantial evidence.  Therefore, this Court must defer to that finding "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014) (agreeing that an allegation of "cherry picking" is "seldom successful because crediting it would require a court to re-weigh record evidence"); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) ("The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.").

Plaintiff also contends that the ALJ improperly minimized and mischaracterized her suicide attempt as simply an "exacerbation in symptoms." (ECF No. 9 at 18 (citing R. at 20).) This argument is not well taken. The ALJ did not characterize Plaintiff's symptoms as she alleges. Instead, the ALJ noted that an "exacerbation in symptoms" culminated in a suicide attempt:

> Subsequently, the claimant's treatment indicates an exacerbation in symptoms. On July 29, 2017, the claimant presented to the emergency room at Trinity West Hospital due to a suicide attempt and she was transferred to the University of Pittsburgh Medical Center. Exhibit 6F. Notably, the claimant was intoxicated at the time of attempt. Exhibit 7F. After a short stay a UPMC, the claimant's symptoms improved and she was transferred to University Hospital for further treatment. Exhibit 8F. The claimant reported daily use of marijuana and drinking approximately two times a month. The claimant remained at University Hospital until August 9, 2017. At which time, she was discharged with noted improvement in her symptoms. Examination on August 19, 2017 noted the claimant did not appear anxious or depressed and that she calm and cooperative. Her attention and concentration seemed intact and her insight and judgment were good. Follow-up on August 29, 2017 noted the claimant remained in apparent distress with marginal grooming and hygiene and a tearful and dysphoric presentation. Exhibit 9F. In October 2017, the assessment was major depressive disorder and panic disorder. Exhibit l2F. In December 2017, the claimant reported improvement in her symptoms with increased frequency in counseling sessions. Additionally, examination noted she did not appear to be anxious or depressed. Exhibit 11F. On January 8, 2018, Mary Schmidt reported the claimant attended outpatient counseling two times a month, but that she did not attend during exacerbations of severe depression due to self-isolation. Exhibit 12F.

(R. at 20.) The undersigned finds no error in the ALJ's assessment of Plaintiff's suicide attempt and, for these reasons and the reasons previously discussed, the RFC appropriately accommodated any limitations associated with Plaintiff's mental health condition.

Finally, Plaintiff suggests that the ALJ improperly accorded "significant weight" to Dr. Haskins and Dr. Todd, the two state agency reviewing psychologists, because the most recent of these opinions was issued nearly two (2) years prior to the ALJ's decision. (ECF No. 9 at 19–20.) The undersigned disagrees. As an initial matter, the ALJ reasonably assigned "significant

weight" to the opinions of Dr. Haskins and Dr. Todd who both found that Plaintiff had mild limitations in activities of daily living, moderate restrictions in social functioning, moderate restrictions in maintaining concentration, persistence and pace, and no episodes of decompensation, which was explained by the ALJ and supported by the record evidence previously discussed.  (R. at 17–22, 73, 77–79, 86–88, 92–94, 105, 109–11, 125–27.)  In addition, to the extent Plaintiff suggests that the ALJ should have rejected the state agency psychologists' opinions because they were issued in January and May of 2016, approximately two years before the ALJ's decision, there is always a gap between the time the state agency physicians review the record and issue opinions and the when the ALJ issues a decision.  *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) (internal citation omitted).  "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand."  *Id.* (citation and internal quotation marks omitted); *see also McGrew v. Comm'r*, 343 F. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in [the claimant's] condition.").  Here, for example, the ALJ specifically considered medical record evidence from December 2017 that Plaintiff reported improvement in her symptoms with increased frequency in counseling sessions.  (R. at 20, 1308.)  Notably, Plaintiff does not point to any specific evidence post-dating the state agency opinions that renders these opinions untenable or otherwise requires the ALJ to include additional limitations for breaks, being off task more than 10% of the day, or being late to work or absent from work more than two times per month.  *Kelly*, 314 F. App'x at 831; *McGrew*, 343 F. App'x at 32; *Garback v. Comm'r of Soc. Sec.*, No. 1:18-cv-168, 2019 WL 549245, at *6 (S.D. Ohio

Feb. 12, 2019) (finding the no error in the ALJ's decision to assign "substantial weight" to state agency opinions where later evidence did not establish such opinions "untenable"), *report and recommendation adopted by* 2019 WL 1099757 (S.D. Ohio Mar. 8, 2019).

In short, for all these reasons, the ALJ thoroughly addressed and considered the record evidence and substantial evidence supports the ALJ's RFC that does not include the additional limitations sought by Plaintiff related to limitations for breaks, being off task more than 10% of the day, or being late to work or absent from work more than two times per month. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  August 5, 2019                    *s/ Elizabeth A. Preston Deavers*
                                         ELIZABETH A. PRESTON DEAVERS
                                         CHIEF UNITED STATES MAGISTRATE JUDGE